The third case this morning is number 17, 2297, South Tech Systems, LLC, versus Engineered Corrosion Solutions. Mr. Bennett. Yes, thank you. And again, let's not start the clock for a moment. You have asked for a remand to consider additional grounds which were not instituted before, right? Yes, that is correct, Your Honor. And I believe that has been opposed by the patent owner in this case. Okay. And Mr. Stachyson? Stach, Your Honor. Stach. And you oppose that remand? Yes, Your Honor, we do. On the ground that you read SAS as only covering unaddressed claims? That is part of the argument, yes, sir. What's the rest of it? The rest of it is the non-appealability under 314D of institution decisions, which needs to be read in light. Both with BOZO and SAS together, I think still the non-appealability clause would require       Yes, Your Honor, we do. On the ground that you read SAS as only covering unaddressed claims? That is part of the argument, yes, sir. But I also do not read SAS to apply the grounds only to claims. Okay. All right. Well, you can address that in your argument. So why don't you start the clock, please? Yes. May it please the Court? The first issue I'd like to address is the issue on the motivation to combine the Viking and Wood references. As you know, the Viking reference teaches a dry pipe sprinkler system with manual drains. And the Wood reference teaches an automatic drain that's specifically designed for a dry pipe system. The Board in the case held there was no persuasive evidence of a reason to combine those references. However, I think the Board's own findings on that issue are inconsistent and undercut the Board's legal conclusion there. And I'd like to start, I guess, by directing the Board's attention to three sentences of the final decision, which I think frames the issue quite nicely. This will be on page 23 of the appendix. This is page 14 of the final decision. And on page 14, the Board states, Wood refers to a typical prior arc two valve manually operating condensate drain. The manually operated prior arc condensate drain disclosed in Wood is referred to as a two valve drum drip in Viking and is shown at reference numeral 24 in the figure on page 2 of Viking. The Wood device improves on this manually operated prior arc device by providing for the discharge of condensate automatically. And then just a few sentences later at the end of the next paragraph, the Board says, as explained in Wood, the basic purpose of the condensate drain 32, that's the drain in Wood, is to eliminate the need to manually drain small amounts of condensed water from piping systems and other containers. So in the factual findings, the Board found the reason. That would be a reason to substitute the Wood automatic drain for the Viking manual drain. Correct. But what you're trying to get Wood for is the vent. And I know the vent is part, or at least you think it's part of the automatic drain. Correct. But you didn't, correct me if I'm wrong, but I thought you argued that you would add the Wood drain to the system to get a vent, not that you would substitute the Wood drain, automatic drain, to the Viking manual drain to improve the operation of the drain. Yeah, exactly. They seem to be two different things to me. Well, they are, those are two different arguments, but I would submit that the argument that you just articulated is not the argument that we made in our opening brief. That is the argument that the patent, that is the patent owner's characterization of our argument. We have never argued to use, to add a second drain, a second unnecessary drain to Viking to use solely as a vent. I mean, just stating the argument out loud sounds kind of ridiculous. So it is not an argument that we made. The first mention of that argument, you will find, will be in the patent owner's response. It is in fact a straw man argument. Well, where in your papers to the board do you argue that you would substitute the automatic drain of Wood for the manual drain of Viking to get a vent? Yes. Okay. In the brief, we never used the word substitute or never used the word replaced. And I would admit that... You used the word add. Well, correct on a number of occasions. But if you read that sentence in context where it says to add a vent, it does not say to add a drain. And if you read that sentence in context, the first thing we do is describe Viking and the fact that Viking has manual drains. Next, we mentioned that Wood discloses an automatic drain, and that is the fact of its And in fact, the automatic operation is described in detail in our brief. And really, it is not talking about the automatic operation of the drain. It says the automatic operation of the drain valve 40. Immediately after describing the automatic operation of the drain valve, the next sentence says, thus, Wood discloses the vent. So when he uses the word vent, they are referring to the automatic drain valve, the automatic drain valve in Wood. Now, when you get to the legal conclusion, it says, it would be obvious to add a vent operative to discharge air as taught by Wood. So we're referring back to the teachings of Wood. Now, what does Wood teach? Wood teaches using an automatic, a drain with an automatic vent as a replacement. So what you're saying, I gather, is that even though you didn't say what you meant was substitute Wood's automatic drain for Viking's manual drain because it would get you the automatic drain and a vent, that's what you meant? That's what we meant, exactly, Your Honor. That's not how the board construed your argument. That's correct, and that's where we think the legal error lies. Why is it legal error? I mean, you didn't make your argument very clearly. I mean, I get what you're saying is no logical person would have said, let's add a second drain just to get a vent, but that's the way it reads. But then the question, I think, becomes, we also did not say, add a second drain and repurpose it as a vent. We didn't make that argument either. That's the argument that the board addressed. If the board is going to say, well, there's a hole here, which the patent owner filled in with this straw man, we did reference the teachings of Wood, and in our reply briefs But that's part of the problem is that you did not give a full developed motivation to combine to the board based on this theory. So I mean, if you had the obligation to present it, if you didn't present evidence in support of this theory, then why would the board have an obligation to go down that road? Well, I think we did present evidence, and the evidence is the Wood reference itself, which provides the explicit motivation. And the board, in its decision, said that the Wood- Where in the Wood reference does it provide an explicit motivation to add an automatic drain to also get a vent? It doesn't. Well, you just said it did. No, no, not to get a- I mean, here's the problem. The board found no motivation to combine. That's a factual issue that we review for substantial evidence. You're making arguments that, of course, nobody would have said to use Wood to get a vent by adding a second drain, but you didn't say substitute the automatic drain for the manual drain. Let me go back to that. Let me ask you this. If the board's finding is there's no motivation to combine because all you argued was you would add Wood, and nobody would add a second automatic drain in addition to a manual drain, that would be supported by substantial evidence, right? I think not. Here's the reason. Why not? Because our argument doesn't say add a drain. It says add a vent. Let me- No, no, no. You're not answering my hypothetical. My hypothetical, though, is the factual conclusion that the board thought you were raising and that they addressed and rejected was you would go to Wood to add a vent. And the board said, well, the vent in Wood, to the extent there's a vent in Wood, it's in the automatic drain. You haven't shown that a skilled artisan would have combined Viking with Wood to add a drain to get that vent. Is that supported by substantial evidence? I think not. I think that's erroneous. And here's why. I want to go back to that sentence. It says- So you think that there- but that suggests- let me make it clear. My hypothetical is not suggesting that your argument is substituting. It is adding the drain from Wood to Viking, so two drains. That conclusion that you wouldn't do that is supported by substantial evidence. I agree. But the board's finding that there's no motivation to use Wood as a second drain solely as a vent. To add Wood's drain to the system. I agree. There's no evidence for that. But that's not the argument that we make. Help me. I'm confused. The patent we're talking about here, the 700 patent, has two vents, right? It has a drip drain to get rid of the water and it has a vent to get rid of the excess oxygen. Is that correct? That's the way it's claimed, yes, Your Honor. Right. So the patent we're talking about has two drains, and what you're saying is that you would add the Wood drain to get the vent, and there wouldn't be any inconsistency between the patent and doing that, right? I think your premise of your question is wrong. Viking doesn't, the 700 patent doesn't show two drains, it shows a drum drip drain and a vent. Well, that's what I'm... Yeah. We're getting caught up in the terminology, but it has a vent and a drip drain. So adding a vent to Viking wouldn't be adding something duplicative of a drip drain, right? Correct. And this gets me back to the point I've been trying to make. So if you will, Your Honor, the petition equates the drain valve 40 with the vent. In that sentence it says, add a vent. If you substitute the word drain valve there, add a drain valve operative to vent gas as taught by Wood. If you add the word drain valve there, which is what the petition was talking about, add a drain valve as taught by Wood. Now what does Wood teach? Wood teaches putting the drain valve in one of the vents, or you could put the whole vent in. I think either way is equivalent. But once you add a valve, and the motivation to add the valve is to automatically drain. It's not to get gas, but it just so happens that it operates that way. And that's the point, that once you find the motivation to combine, and it doesn't have to be for the reason that the patent owner did, the motivation to combine is to eliminate periodic manual draining. And then the question becomes, okay, there's a reason to add Wood's drain valve to one of the drains of Viking. Now once you've done that, then the question is, does that meet the claim limitations? And I think it does, because that drain valve is specifically designed to allow air to escape while maintaining pressure between a minimum and a maximum system pressure. And so the motivation to combine, so I would suggest go back and read that sentence, but instead of reading the noun vent, substitute the word drain valve in there, and if you look at page 15 of our petition, look at the claim chart, we say that the drain valve is the vent. And we don't say put the drain, we don't really, you're right, we didn't develop, we didn't say where to put the drain valve, but Wood explains where to put the drain valve. And we did, it specifically said, as taught by Wood. And as far as the reply brief is concerned, all we did was go and further describe those teachings of Wood to further argue the obviousness that we had argued before. If we agree that there needs to be an SAS remand here to consider the other grounds, do you think we should go ahead and decide what the board did on these grounds, or just remand the whole case? It seems like you should remand the whole case if that's what you're going to do, and let the board see if they can correct that. You don't want us to say anything one way or another? I mean, isn't it likely if we don't do anything, the board is just going to reinstate its decision? I guess if we're going to, if you're going to have a decision, yes, I guess it would be helpful to the board to have that information, since we've now gone through the process of arguing this case. It's probably helpful to the board to have that. So let's reserve the rest of your time, Mark. Mr. Stake? Thank you, Your Honor. May it please the Court. On this topic of... It seems to me as though there's a problem that the board mischaracterized Wood. Wood, on its face, talks about venting air, and the claims describe that venting is controlling the pressure so that it doesn't release the water. Isn't that the case? No, it's not the case, Your Honor. The 700 patent distinguishes, and in this art, there's a distinguishing feature between vents and drains. Well, it does show venting air, right? In Wood, it does, if there's not water present. The claims, though, require both a vent, so one of ordinary skill in the art would first have to consider... But the problem is that the board didn't consider Wood is showing venting of air, right? No, I think they did. They used a shorthand for the claim language, which they referred to as balancing pressures. But what they're referring to there is the operation of what's claimed where you're displacing oxygen, and you have to do that at a preset or adjustable limit. And in Wood, even if you were to do the entire combination that the appellants are arguing for today, where there is this substitution, you still don't get to the claimed features because Wood, if there's water present, it's not sending any gas out. And it's certainly not sending any gas out at a preset or adjustable limit. Is that the ground that the board decided and rejected Wood on? I didn't read it that way. I thought they were rejecting Wood on the ground, that it didn't show venting of air and didn't disclose controlling the pressure in that respect so that it would not trip the valve. That was part of what they found, but they also said that the discharge of air from Wood is incidental to its operation. They acknowledged that there is air that might be discharged from Wood, but they also found that that incidental discharge of air did not meet the, quote, balancing pressures language, which was what the, again, it's a shorthand for what's claimed. If we look at what's claimed, we see that you have to displace at a preset or adjustable limit. And in Wood, you don't know how much water is coming through. You don't know how much oxygen at any point might come out. You don't know if it's ever going to vent in the appellant's terms. Any oxygen. And you're certainly not doing it at the preset or adjustable limit that's in our claims. So you've got multiple... Well, I'm not sure that that's true because it talks about the predetermined limit in there in relation to not tripping the valve that allows the water to come in. Well, it's talking about using pressure. Are you referring to the 30 to 40 PSI where it cycles? Yes. Yes. So that's the pressure in the system as a whole. And you can relieve that pressure in the system by getting rid of water from the system or by getting rid of gas. But it talks about maintaining a predetermined pressure, right? Yes. Yeah, and the purpose of maintaining the predetermined pressure is so that you don't trip the valve that allows the water in. I think, yes. I mean, you do want to have that pressure so that you don't end up tripping the valve. I don't think Wood states that, and the board was free to make its findings on that. But I think what I'm arguing is that even if you take into account and say it wasn't going to trip the dry pipe valve, you still don't end up with the claimed vent because you have no idea how much water or air, or if any air at all, is going to be vented out of Wood's drain, even if you consider it to be a vent. Which, in this art, the drum drip will have some incidental release of gas. That's a manual drain that when you close the top valve, if the chamber's not full of water, some gas is going to come out. But no one would look at the drum drip and no one's claiming the drum drip is a vent just because some gas comes out. It's the same idea with Wood. One of Ordinary Skill in the Art looking at Wood would say this is a drain, not a vent, for one. And so that's one distinguishing feature over the claims. But for two, we say you not only need a vent, we need a vent that does a very specific thing. Wood does show venting of air, which is different than allowing the water out, right? No, it shows a venting of air only if water is not present. That is the disclosure in Wood. It says when water is not present, air could be vented. And that's a distinguishing feature because when you have a claim that's talking about expelling oxygen at a preset or adjustable limit, you don't know if any oxygen at all is coming out, much less at what limit it's going to come out. So your basic point is that Wood doesn't help them because it only shows discharging air when there's no water present? Well, because it doesn't have any rate associated with it. It may never discharge air. Well, it does have a rate. It talks about the predetermined limit. Well, it talks about, it's using pressure like a clock on the system. It's basically saying that you could open an automatic valve in a number of different ways. You could have electronics there and you could hook up a clock to it, something like that. But they knew that there was already a pressure regulator on the air compressor in Wood. So they used that as a clock to put enough pressure on that valve to open it every so often to get rid of the condensate. And when you read Wood, it refers to condensate in almost every location. There's a couple spots where it says, it acknowledges. If there's not enough water there, when the pressure gets lowered, then some additional gas might come out. But that's an incidental, and the board acknowledged that and called it incidental. Okay, go ahead. I sense confusion, Your Honor, with my argument. And I apologize if I'm confusing things here. But that pressure that's being discussed cycling between, say, 30 and 40 psi. So that when the pressure drops down to 35 psi, at 40, the valve is going to open in Wood. Water is going to come out. Pressure is going to drop. Then at 35 psi, it closes again. To maintain the pressure so that the water valve doesn't get tripped. That is certainly what the appellants are arguing. And I think even if you agree with that premise, that still does not get us to the claims. The claims actually require not tripping the valve. That's one separate requirement. This has to be an operational system where you're not tripping that valve. It has to be in service. But it also separately has to have a vent that has this oxygen venting feature at a preset or adjustable limit. So even if you were to say that Wood wouldn't trip the dry pipe valve, that still doesn't get you to the claim. This is a separate requirement of the claim. Now acknowledge, the board also found that there was not persuasive evidence that it would prevent the dry pipe valve from tripping. And that's certainly helpful to our case. But even if you don't buy that, there are other reasons why, and the board identified them, why we have additional features in our claim that would preclude a finding of obviousness here. And there's substantial evidence to support that. The big question for me is there's sort of two prongs to it. They did bear the burden. So even if we hadn't provided evidence in opposition, the board was free to find against them because they didn't carry their burden. But we did actually provide affirmative evidence that supported our positions through expert testimony. And in Appellant's opening brief, they mention it once but only to agree with the statement that they quoted. And then in the reply, they said it was a straw man argument and it was irrelevant. But it's actually not irrelevant to the arguments. It identifies why wood is not a vent and doesn't do this pressure balancing that the board found. So there's not really been an attempt to... Wouldn't it be better if we had a claim construction event so that we could... I mean, I see that the board didn't think wood was disclosing a vent, but wouldn't it have been better off if we had a claim construction event? So that conclusion would be tied to a claim construction? I mean, I don't know that it needed to be an explicit construction given that the 700 patent, even in its claims, distinguishes between drains and vents. But I also think that it wasn't essential for at least some of the additional board's findings. We're dealing with a number of findings here. And any one of them, I think, would support the finding of non-obviousness. So even if the court were to assume that we needed to construe vent for some reason, we still have these other features that are... Even if you were to call wood a vent, it still doesn't do what the rest of our claim requires. So I don't know that we would need to send it back for a construction there on vent per se. With respect to the SAS issue, I didn't really understand your second point about the institution decision's not appealable because that's exactly what SAS did was consider the institution decision, right? And it distinguished Quozo near the end of the opinion. So how is that still an argument? It's still an argument because the no appeal clause in 314D that was interpreted in Quozo, the reason that the Supreme Court found the institution decision aspects reviewable in SAS was because there was a clear directive they found in 318A that required on a claim-by-claim basis that the board had to institute on all claims of challenge or none. And that that was a clear directive of the statute that had been violated and therefore would fall into that category that the Supreme Court referred to as shenanigans that are reviewable. What they said in SAS is the final written decision requirement is that they address all claims and perhaps all grounds also. And so it's a defect in the final written decision rather than a defect in the institution. It flows from the defect in the institution, but it's a defect in the final written decision itself, right? I disagree with the portion of the premise that says that they said it applies to claims and grounds. I didn't say that. What I said is that they're not addressing the institution. They're addressing the final written decision, which is supposed to address all grounds, and they say it was an error to not address all claims. I disagree. I think with all that they said in SAS... You're misreading me. Forget about grounds. Let's just talk about claims. Just about claims, yes. The defect is that they didn't address all the claims in the final written decision, which flows from their federated institute, but it's a defect in the final written decision, which doesn't seem to be barred by appealability, and that's what the Court concluded. You are right that they did find that it is all about the claims, and then they worked backwards. If the final written decision needed to address all claims, then the institution decision needed to, and they were able to address that. They weren't barred under 314D because of that. That's a different factual scenario here. We don't have a clear directive in any sense. Your two arguments really are tied together. In other words, there's no argument about the institution, about our review being barred, unless we accept the proposition that it applies only to claims and not to grounds, that SAS applied only to claims and not to grounds. No, that's... Well, they may be related, but I don't think they're necessarily... Let's just assume we agree SAS requires institution on all grounds and not just all claims. So I know you're making that argument. Let's assume you lose. Why are we barred then from review here? Well... Isn't it the same error? It is not the same error because, well, if you believe that SAS requires it, then... Or not institute on all claims, but institute or not institute on all claims and all grounds. That's the way we read SAS. Then that error, as my colleague says, is in the final written decision, and we're not barred from reviewing it, are we? I think if you take that reading of SAS, then you are correct. And I don't think we can read SAS that way. And the reason is because the closest they come in the decision to talking about grounds is, I think, this binary choice language and about the petitioner defining the scope of the trial. And they were doing that all in the course of talking about whether you need to have a final written decision that reaches all claims. And I agree that it is a binary... Actually, the language of the statute doesn't just say claims. It says the patentability of all claims. Correct? I believe that's correct. And so patentability of claims turns on what the grounds for attacking patentability is. So in addition to the binary choice language, which is pretty rough for your argument, you also have the fact that you're reading the statute, you're omitting words from the statute. Well, I think on this binary choice, it was based on the language of the statute that says whether to institute. And we see that language actually in other parts of the AIA. And if we interpret SAS as saying that whether to institute means binary for entire petitions and all of the grounds raised in there, we run into conflicts with other parts of the AIA, such as in 325D that also talks about whether to institute or order a proceeding under this chapter, chapter 30, and so on. What it's talking about there is when it says determining whether to institute or order a proceeding, the order of proceeding is referring to re-exams. So we have the same language of determining whether to institute. And then in 325D, they extend it into re-exams. But we know from SAS, re-exams are a claim-by-claim, ground-by-ground basis. You don't have to accept or reject an entire re-exam request just because 325D refers to it as a weather determination. It's the same language in the AIA also applying to institution decisions in the context of IPRs and to re-exams. I think we're getting set up for a conflict in the way we would have to interpret this whether to language if we were to take a broad view of it and say that it's a purely binary choice at the petition level. Because then we would essentially be saying that that would also be true of the re-exam level. And we know in SAS, the Supreme Court even agreed, that that's not the scheme that exists in re-exam. So I think we have to – there may be other conflicts as well. This is just one of them that I think would be created. And I don't think we need to get there, though. We can limit SAS to what was being addressed there. Does 318A require all claims? Look back at the institution decision. You have to institute on all claims to get there. And that's what was argued and briefed and decided by the court. And if we go beyond that, we start to run into some of these additional issues that I'm talking about. Okay. Thank you, Mr. Stake. Mr. Bennett, you've got a couple minutes here. Yes. In the argument, I really didn't get to the point about the erroneous factual findings regarding the board's characterization of Wood's teachings. I think it was discussed at length during opposing counsel's argument. But that's rough, given our standard of review, right? I mean we would have to find that they were clearly erroneous. They go through a lot of bases for what they were deciding on. And I think they are. They are clearly erroneous. The board found that the Wood's drain valve did not regulate pressure. In fact, the system is designed to operate between 30 and 40. The valve opens at 35 when you're pressurizing and closes at 35. It clearly regulates pressure. But the board specifically found that the release of air was completely incidental to the operation. And again, that's clearly erroneous. When the system is pressurized to 40, the valve has to remain open to drop the pressure back to 35. The pressure drop is essential to the operation of the valve. You're losing 12.5% of the volume of that system when you drop from 40 to 35. You do that nine times, you've replaced the entire volume of the piping system. So that is not incidental. That is how the system operates. Now the purpose, of course, the board's correct that the purpose is to drain water. But they do that by opening the valve and let the water carry. In fact, in one embodiment at the bottom of column three in that patent, I think it's on page 837 in your appendix, they say they leave the valve open and it continuously vents as long as the system pressure doesn't go below 30. So in one embodiment, it's continuously venting air. So it clearly lets air out. It clearly regulates pressure. And as far as this about not operating at a predetermined limit, the only example of a predetermined limit that's cited in the patent itself is a pressure limit. And this operates at pressure limits. The patent says the only reference to a limit is a relief valve that operates at a predetermined limit to prevent overpressurization. There is no other example of a limit in the patent. So a pressure limit has to be a limit. And in addition, Wood describes in addition to the pressure limit, it has a discharge orifice that controls the rate of flow out of that valve once it's open. So it does also disclose a predetermined limit. Okay. Thank you, Mr. Bennett. Thank you, counsel. The case is submitted.